WARREN TOWNSHIP v. ENGELBRECHT.

1. DRAINS—SEWERS—CONSTITUTIONAL LAW.
    Drain code as amended by Act No. 318, Pub. Acts 1929, provides for building sewers by county drain commissioners, and, however faulty, must be sustained, in absence of constitutional objections.

2. STATUTES—CONSTITUTIONAL LAW.
    Unless there are constitutional objections to law, court may not set it aside, however unwise or impractical it may be; but remedy for defects is with legislature.

3. DRAINS—SEWERS—INDEPENDENT DRAINS.

Proposed drain traversing three streets parallel to and within a few hundred feet of each other, and running into another drain in street at right angles thereto, is not objectionable as constituting three independent drains.

Error to Macomb; Spier (James E.), J. Submitted June 19, 1930. (Docket No. 125, Calendar No. 35,108.) Decided October 3, 1930.

Certiorari by Township of Warren against Bert Engelbrecht, county drain commissioner of Macomb county, to review proceedings for the construction of a drain. Plaintiff reviews dismissal of writ of certiorari by error. Affirmed.

*George W.* and *Clifford A. John,* for plaintiff.

*Alvin Wolfson* (*John C. Spaulding,* of counsel), for defendant.

BUTZEL, J. Plaintiff, township of Warren, a municipal corporation, is situated in Macomb county, not far distant from the city of Detroit. It contains the village of Warren and outlying agricultural lands and some subdivisions. Among the latter are Piper's Van Dyke Subdivision No. 10 and Piper's Van Dyke Subdivision No. 7, all in Warren township, Macomb county. These two subdivisions adjoin one another and are laid out with streets that have been dedicated to the public. They contain 230 lots, all facing upon streets of the subdivision. In order to secure sewer facilities for these lots, an application for laying out a designated drainage district was filed with the county drain commissioner of the county of Macomb, defendant in this cause. The petition was signed by 22 freeholders of the town-

ship, who assert that they own 16 of the 230 lots of the two Piper subdivisions. The location of the drain was to be along Essex, Jewett, and Chapp streets, and also along Lorraine avenue, to which the first named three streets run at right angles. Upon the granting of the petition, an order laying out and designating the district was made by defendant on February 27, 1930. The drain was named "Jewett Avenue West Lateral and Branches of North Lorraine Arm Drain."

On the 24th day of March, 1930, a petition for locating, establishing, and constructing a drain, signed by 18 of the same parties, was filed and the first order of determination was made by defendant on April 15, 1930. The commissioner found the drain was practicable, necessary and conducive to public health, convenience, and welfare.

Thereupon, plaintiff filed a petition for writ of certiorari in the circuit court for Macomb county, in order to prevent the construction of a sewer by virtue of the foregoing proceedings. It claims that the proposed drain is to be a city sewer, and that the building of such a structure is not authorized by Act No. 316, Pub. Acts 1923, as amended by Act No. 365, Pub. Acts 1925, Act No. 331, Pub. Acts 1927, and Act No. 318, Pub. Acts 1929, which together constitute a codification of the drain laws of the State. The plaintiff further claims that the drainage district and the proposed drain constitute three separate drains, inasmuch as they run along three parallel streets.

Our attention is called to the fact that notwithstanding Act No. 318, Pub. Acts 1929, which amends what appears to be a complete codification of the drain law, nevertheless, at the very same session of the legislature, Act No. 158, Pub. Acts 1929, was en-

acted. It provided for the establishment of drainage districts by the county drain commissioner, etc. This law applies to agricultural lands, was approved May 20, 1929, and is inconsistent with the drain code as amended by Act No. 318, Pub. Acts 1929. For the purposes of this case, Act No. 158, Pub. Acts 1929, which applies strictly to agricultural lands, need not be considered. The lands which the proposed drain or sewer is to serve have been so cut up, subdivided, and sold to separate parties that they can no longer be considered agricultural lands. We call attention, however, to the inconsistency in these two laws and the need of further legislation to harmonize and clarify them.

We first consider whether the present drain code, as amended by Act No. 318, Pub. Acts 1929, permits the building of a sewer. It is admitted that a sewer is to be built. In the case of *Clinton* v. *Spencer,* 250 Mich. 135, we stated that under the drain code as it existed in 1927, there was no provision for the building of a sewer, and that there was a difference between a drain and a sewer. In an effort to overcome this objection, Act No. 318, Pub. Acts 1929, was enacted. It amended the previous code by not only providing that the definition of the word "drain" should include a sewer, but it also amended the title of the former act so as to provide for the building of a "sewer" as well as a drain. Objection is made to the fact that, notwithstanding these amendments, the body of the act remains substantially as it formerly was and only makes provision for the construction of a drain and not a sewer, except as incidental to the building of a drain in places which require a covered sewer connection.

Our attention is called to the fact that the petitions for locating, establishing, and constructing a

drain are signed by 18 owners of the 230 lots. The petition no more than gives jurisdiction to the officers in whom the law vests discretion. If a drain is to be built or an assessment levied, public hearings are held with notice. The owners of property subject to assessment may contest the necessity of such improvement, show cause why it should not be built or that it does not benefit them, and have certain other legal redress. These provisions provide for a rapid *quasi*-legal procedure, and were originally adopted for the construction of an inexpensive surface water drain and not an expensive city sewer.

Further objection is made to the provisions of the act which require that the petition shall be signed by a number of freeholders in said drainage district whose lands would be liable to assessment and benefits, equal to one-half of the number of freeholders whose lands would be traversed by the drains applied for. As a matter of fact, in the case at bar, the only party whose land would be traversed is the plaintiff, a municipal corporation, which in the present proceedings is questioning the authority to build a sewer under the drain law. There being only one freeholder whose property will be traversed by the drain, it follows that any one lot owner whose property would be assessed can make the application, and thereupon it would become a discretionary matter with the commissioner and the board of determination to determine whether a drain or sewer be constructed or not. They might come to this determination, notwithstanding the fact that the vast majority who would be assessed for building the sewer were absolutely opposed to the project. Twenty-one owners of the 230 lots in the subdivision made the application in the present instance. The township of Warren, whose property alone would

be traversed, did not join in the application. If defendant is correct in his construction of the law, then, if the drainage district were larger and all of the property abutted a road owned by the township, a person owning but one lot, or less than 1% of all of the property proposed to be served, could make the application. This would institute proceedings which might result in the vast majority of the owners of the property being forced to pay an enormous assessment for a city sewer in front of their property, notwithstanding that it would be of no use, benefit, or value to them. The assessment as in *Clinton* v. *Spencer, supra,* might be so far out of proportion to the value of their lots or farms as to be confiscatory. There is much force in plaintiff's contention. However, there is no doubt but that the act was amended so as to provide for the building of sewers. This is shown in the inclusion of the word "sewer" in the amendment to the title of the act, and by further stating in section 2 (chap. 1) of the act that the word "drain" shall include "any sewer or conduit composed of tile, brick, concrete or other material" (section 2, chap. 1, Act No. 318, Pub. Acts 1929).

No matter how unwise and impractical we personally might deem the legislation to be, we cannot set aside a law unless there are constitutional objections to it. None have been pointed out to us. The fact that sewers at a cost of over $10,000,000 had been constructed under this law since the 1929 amendment, as is pointed out by defendant, would not overcome any constitutional objections were they pointed out to us. The remedy for the defects in the law is with the legislature.

Further objection is made to the drain on account of the fact that it traverses three independent streets

and runs into Lorraine avenue, the main thoroughfare into which the three streets run. These three streets are parallel to and within a few hundred feet of one another. The whole scheme is a homogenous one. The laterals all run into the same sewer on Lorraine avenue. They are not independent and a mile from one another as was the case in *Clinton* v. *Spencer, supra.*

While we are much impressed with plaintiff's contentions, we are constrained to uphold the judgment of the lower court dismissing plaintiff's petition. This being a matter of public interest, neither party will recover costs.

WIEST, C. J., and CLARK, McDONALD, POTTER, SHARPE, NORTH, and FEAD, JJ., concurred.