GRAY *v.* DINGMAN.

1. APPEAL AND ERROR—DRAINS—SEWERS—INVALID PROCEEDINGS—
   STATUTES—AMENDMENT.
   On appeal from dismissal of bill to declare void proceedings to
   establish a drain and sewer system and to cancel assessments,
   such proceedings as were taken under drain law prior to amend-
   ment thereof permitting construction of sewer thereunder are
   conceded to be invalid, although it is not decided that such
   is the case (Act No. 316, Pub. Acts 1923, as amended by
   Act No. 365, Pub. Acts 1925 and Act No. 318, Pub. Acts
   1929, 1 Comp. Laws 1929, § 4839).

2. DRAINS—STATUTES—SEWERS.
   Sewers may be constructed under the drain law as it appears at
   present (1 Comp. Laws 1929, § 4839).

3. CONSTITUTIONAL LAW—STATUTES—SEWERS.
   The legislature has full power and authority to enact a statute
   providing for the construction of a sewerage system under
   supervision of the county drain commissioner (1 Comp. Laws
   1929, § 4839).

4. SAME—LEGISLATIVE POWER—STATUTES—IRREGULARITIES IN AS-
   SESSMENTS FOR PUBLIC IMPROVEMENT.
   If whether or not a reassessment for a public improvement may
   be made depends on the nature of the original infirmity in-
   validating the original assessment and the defect consisted
   not in the fact that there was no just or equitable charge for
   public purposes upon the property upon which it was sought
   to be imposed but was some irregularity of proceeding or
   some oversight in the statute, the legislature may retrospec-
   tively supply the oversight or cure the irregularity.

5. MUNICIPAL CORPORATIONS—LOCAL IMPROVEMENTS—SPECIAL AS-
   SESSMENTS.
   A special assessment may be levied for a public work already
   done.

6. CONSTITUTIONAL LAW—LEGISLATIVE POWER TO RATIFY.
   What the legislature could have authorized, it can ratify if it
   can authorize at the time of ratification.

7. DRAINS—SEWERS—STATUTES—REASSESSMENTS—VALIDITY.

Reassessment for sewer construction *held,* valid, notwithstanding work done in pursuance to previous proceedings of doubtful validity was taken over and paid for where total cost and expense of improvement was levied and assessed in accordance with statute authorizing sewer construction, and the cost of construction, contractors and amount of their respective contracts under both original and valid subsequent proceedings were the same (Act No. 316, Pub. Acts 1923, as amended by Act No. 365, Pub. Acts 1925 and Act No. 318, Pub. Acts 1929, 1 Comp. Laws 1929, § 4839).

Appeal from Wayne; Toms (Robert M.), J. Submitted January 20, 1937. (Docket No. 65, Calendar No. 38,799.) Decided March 1, 1937. Rehearing denied April 27, 1937.

Bill by Theo. C. Gray and others against George A. Dingman and Harry I. Dingeman, former drain commissioners of Wayne county, Leo J. Nowicki, drain commissioner, Jacob P. Sumeracki, Treasurer of Wayne county, and Wayne County, a municipal corporation, to declare void apportionments, assessments and other proceedings relative to the construction of a drain. Bill dismissed. Plaintiffs appeal. Affirmed.

*Ralph B. Clark,* for plaintiffs.

*Duncan C. McCrea,* Prosecuting Attorney, *Garfield A. Nichols* and *William L. Brunner,* Assistant Prosecuting Attorneys, for the defendants.

*Goodenough, Voorhies, Long & Ryan* and *Miller, Canfield, Paddock & Stone, amici curiæ.*

POTTER, J. This case, here on 147 pages of pleadings and a brief stipulation of facts, involves the validity of proceedings in Wayne county taken under the drain law.

July 31, 1926, an application was filed with the county drain commissioner of Wayne county for laying out a drainage district under Act No. 316, Pub. Acts 1923, as amended by Act No. 365, Pub. Acts 1925. Proceedings regular in form were taken upon this application for the laying out of a drainage district and the construction of a drain therein under the acts above mentioned, and for the apportionment of benefits therefor. Contracts were let and benefits apportioned between September 23 and November 25, 1929. After the contracts were let and the work commenced, the drain commissioner was advised the proceedings might be held void by reason of the decision in *Clinton* v. *Spencer,* 250 Mich. 135.

After the litigation was instituted in *Clinton* v. *Spencer, supra,* section 2 of the drain law was amended so as to read as follows:

"The word 'drain' whenever used in this act shall include any water course or ditch either open or closed, any covered drain, any sewer or conduit composed of tile, brick, concrete, or other material, any structures or mechanical devices, that will properly purify the flow of such drains, any pumping equipment necessary to assist or relieve the flow of such drains and any levee, dyke, barrier, or a combination of any or all of same constructed or proposed to be constructed for the purpose of drainage or for the purification of the flow of such drains." 1 Comp. Laws 1929, § 4839.

After the enactment of this statute, April 5, 1930, a new application was filed for laying out a drainage district under the statute as amended by Act No. 318, Pub. Acts 1929. Proceedings were taken under such application for the laying out of a drainage district and the construction of a drain or sewer

therein, and the apportionment of benefits therefor. Under such proceedings, contracts were let and benefits apportioned on or after September 22, 1930. Proceedings regular in form were further taken for the assessment of drain taxes in accordance with such latter apportionment of benefits and the sale of bonds in anticipation thereof to the amount of $2,502,000. The cost of construction of the drain as computed by the drain commissioner was substantially the same under both proceedings, and as computed under the proceedings of 1930 the total computed cost of constructing the drain was $2,503,976.15. Of said computed cost, drain orders to the amount of $1,784,646.64 were issued to the several contractors prior to September 22, 1930, and drain orders for the balance were issued thereafter,—the contractors and the amounts of their respective contracts being the same under both proceedings. Of the drain orders, $1,773,054.37 were paid prior to September 22, 1930, and the balance were paid thereafter.

The total length of the drain or sewer and its branches as constructed is 9.905 miles, and the depth varies from 16.5 feet to 34 feet. The cost of the pumping station and wet well, exclusive of machinery, was approximately $294,942. The drain or sewer in question serves a large part of the city of Wyandotte, a municipal home rule city, having a population, according to the census of 1930, of approximately 28,000. The sewerage system of the city of Wyandotte as it existed prior to the construction of this drain was attached to and connected with the drain or sewer upon its completion, and the drain or sewer in question is used as an outlet for the sewage of the greater part of the city of Wyandotte.

May 15, 1934, plaintiffs filed a bill of complaint in the circuit court for Wayne county asking that all the proceedings and action had or taken by the defendants relative to the survey, location, establishment and construction of the Wayne county tile drain No. 5, and any arms or extensions or connections thereof, and all apportionments and assessments made thereon against plaintiffs, be decreed to be illegal, unlawful, null and void, and of no effect, and said assessments be cancelled and set aside and the lands of plaintiffs forever discharged of and from the apparent lien of such taxes; for an injunction, and other relief.

The cause was brought on for hearing, and a decree was entered by the trial court denying plaintiffs were entitled to the whole or any part of the relief prayed. From the decree entered, plaintiffs appeal.

We may concede, for the purposes of this case, the proceedings had and taken under the prior drain law were invalid. They may or may not have been so, a point which we find it unnecessary to decide. We proceed to the consideration of the questions involved in this case upon the theory such proceedings were invalid within the rule of *Clinton* v. *Spencer, supra; Township of Lake* v. *Millar,* 257 Mich. 135, and similar cases. The legislature passed Act No. 318, Pub. Acts 1929, amending the section to read as above quoted, which section of the statute now stands as 1 Comp. Laws 1929, § 4839. The passage of Act No. 318, Pub. Acts 1929, above referred to was within the legislative power of the State.

Proceedings were had for the establishment of the drain and sewer system here attacked under the old drain law. Such proceedings may have been invalid, but contracts were let in pursuance of such

proceedings so had and taken and the sewerage system here under consideration was in part constructed. There is no question but that the present act provides for the construction of sewers. This appears not only from the language of the act above quoted, but it has been so held by this court. *Warren Township* v. *Engelbrecht,* 251 Mich. 608. There is no question under the facts stipulated but the sewerage system here under attack was partially completed under the old act, and, under the amended act hereinbefore quoted, such proceedings carried to completion. They are regular in form. The sole ground of attack may be said to be, that the drain commissioner of Wayne county could not take over the old proceedings as a compliance with the new application and adopt and utilize the work done thereunder for the reason such proceedings were void and without jurisdiction under the statute then in force and, therefore, such proceedings were invalid for any purpose.

A house built according to particular plans and specifications is still a house, whether the party constructing it had a right to build it or not. The sewers as constructed under the former proceedings, though they may have been constructed without jurisdiction, were there on the ground and were sewers of the same kind and character as would have been constructed had they been subsequently built under the plans and specifications in the new proceedings, which were identical with the plans and specifications in the old proceedings. It does not seem it would be sound sense not to use and adopt them under the subsequent legal and valid proceedings providing for their construction, though they were built in the first instance in violation of the statute. Though, under the statute in force at

the time the proceedings were had, such proceedings were void for want of jurisdiction, there is no doubt the legislature had full power and authority to enact a statute providing for the construction of such a sewerage system as is here under consideration, and this it has done.

In the early case of *Brevoort* v. *City of Detroit,* 24 Mich. 322, a question arose as to the validity of a reassessment for sidewalk purposes. The court said:

. "This re-assessment is supposed to be void for several reasons.

"One is, that the original assessment being void, there was no constitutional power in the legislature to order a re-assessment. This, however, may depend upon the nature of the original infirmity. If the difficulty there was that the sums assessed did not constitute any just or equitable charge for public purposes upon the property upon which it was sought to be imposed, it is quite clear that the legislature could not make it such a charge. But if the defect consisted in some irregularity of proceeding, or in some oversight in the law itself, in consequence of which a just and equitable claim had failed to be legally imposed, there can be no good reason why the legislature should not retrospectively supply the oversight or cure the irregularity. The actual difficulty in the present case, we are told by the briefs, was that no apportionment was provided for by the act under which the first assessment was made. Surely there could be no reasonable objection to this being provided for by a new assessment."

In *Townsend* v. *City of Manistee,* 88 Mich. 408, a bill was filed to restrain the city treasurer and the common council of Manistee from collecting or attempting to collect a special assessment upon and

against the lands of plaintiffs for the construction of a sewer. The original assessment for the sewer had been invalid and it was subsequently directed to be reassessed, and this court held the proceedings for such reassessment were valid.

In *Thayer Lumber Co.* v. *City of Muskegon,* 157 Mich. 424, plaintiffs filed a bill to set aside proceedings for the construction of certain sewers and to discharge the lien of a special assessment against their property. Proceedings were had and taken for the establishment of a sewer district and contracts were let for the construction of the sewer and the work was partially performed under such proceedings. Plaintiffs then filed a bill in the circuit court for Muskegon county to set aside the proceedings as invalid, and the trial court held such proceedings were invalid; and such finding was affirmed by this court in *Thayer Lumber Co.* v. *City of Muskegon,* 152 Mich. 59. Thereupon other proceedings were had for the establishment of such sewer district and among other things such proceedings recited:

"The said sewers are the same that are covered by a contract heretofore made with William R. Jones and have been partially constructed by him. The route, location, grade, and dimensions of all said sewers are shown by the plats and diagrams herein approved and adopted, and in case there shall be any variance between the description thereof in this resolution and the plats and diagrams, the plats and diagrams shall control."

This court held the proceedings involved in the latter case were valid and the tax imposed thereunder to pay for the construction of the sewers in question was valid, and dismissed plaintiff's bill of complaint. It was there said:

"We do not think that the failure of the council to set up in its resolution the fact that it was a reassessment is fatal. It did, by reference in the resolution to the former plans and specifications and the contract with Jones, clearly indicate that by the proceedings then undertaken it sought to make valid, by due notice and proper description, the assessment which had by this court been declared invalid. The fact that by the terms of the resolution the special assessment was reduced from 75 per cent. to 50 per cent. is a matter of no consequence, and is one of which these complainants cannot in any event complain."

In *City of Sandusky* v. *Roberts,* 226 Mich. 63, certain paving was done by the city in front of defendant's premises. Exception was taken to the validity of the assessment, and eventually, upon objection being made, the proceedings had to lay out the pavement in the first place were held invalid. Upon the trial of the case in question, it appeared the proceedings involved were a reassessment of the assessment district for the cost and expense of the paving. It is there said:

"This re-assessment was based upon a petition of the owners of a majority of the lands liable to be assessed therefor, and, therefore, it is argued by the city attorney that it was unnecessary to give the notice referred to in the foregoing statute. It might be well to state that this petition was signed by the owners of a majority of the real estate which would be affected by the special assessment, and that the owners were the same as when the improvement was first initiated. The petition also expressly ratified all that had been done by the council in making the improvement. We are constrained to hold that the filing of this petition which meets the requirement of the proviso in this statute, although delayed, val-

idated the proceedings and gave the council jurisdiction to enforce the tax.''

In *Wagner, Inc.,* v. *Baltimore City,* 239 U. S. 207 (36 Sup. Ct. 66), plaintiff filed a bill to set aside proceedings for street improvement. It was contended the assessment levied upon this property was for special benefits long since accrued. The supreme court held this contention was foreclosed by the decision in *City of Seattle* v. *Kelleher,* 195 U. S. 351 (25 Sup. Ct. 44), where it was pointed out that a special assessment may be levied for a public work already done. It was there said:

''Whatever the legislature could authorize if it were ordering an assessment for the first time it equally could authorize, notwithstanding a previous invalid attempt to assess. The previous attempt left the city free 'to take such steps as were within its power to take, either under existing statutes, or under any authority that might thereafter be conferred upon it, to make a new assessment upon the plaintiff's abutting property' in any constitutional way.''

In *City of Seattle* v. *Kelleher, supra,* practically the same question was raised as was raised in this case, but the court pointed out that the benefit was there on the ground at the city's expense and there was no reason why the property benefited could not be reassessed to pay for it. This was substantially the holding of the court in *Wagner, Inc.,* v. *Baltimore City, supra.*

In *Charlotte Harbor & Northern Ry.* v. *Welles,* 260 U. S. 8 (43 Sup. Ct. 3), the question of the extent to which the legislature might pass a curative statute was considered by the court and it is said:

''In support of the contention of the petition, plaintiff in error makes a distinction between a

*curative* statute, which it is conceded a legislature has the power to pass, and a *creative* statute, which, it is the assertion, a legislature has not the power to pass. The argument in support of the distinction is ingenious and attractive, but we are not disposed to review it in detail.

"The general and established proposition is that, what the legislature could have authorized, it can ratify if it can authorize at the time of ratification."

We think these cases dispose of the contention of plaintiffs herein. Conceding the drain proceedings had or taken under the statute as it stood at the time they were initiated were invalid, a question we do not decide, still the statute was subsequently amended and proceedings regular in form were had and taken thereunder, the work done in pursuance of the previous proceedings was taken over, paid for, and the total cost and expense of the construction of the improvement was levied and assessed in accordance with the statute in force at the time such assessment was made.

We think the trial court arrived at a correct conclusion, and its decree is affirmed, with costs.

FEAD, C. J., and NORTH, WIEST, BUTZEL, BUSHNELL, SHARPE, and CHANDLER, JJ., concurred.